IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NIMROD SANDERS,

                **Plaintiff,**

                                   **CIVIL ACTION**
    **vs.**                              **No. 06-3329-SAC**

**(FNU) BENNETT, et al.,**

                **Defendants.**

**ORDER**

    This matter is a civil rights action filed pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) by a prisoner in federal custody.[1] The defendants filed a motion to dismiss, or, in the alternative, for summary judgment (Doc. 40), and plaintiff filed a response (Doc. 45).

**Factual Background**

    Plaintiff was incarcerated at the United States Penitentiary in Leavenworth, Kansas, from October 2005 through February 26, 2007.

    In this action, plaintiff claims defendants Bennett,

---

[1] Plaintiff has notified the court of his release from custody.

Mildner, Terrell, Raney, and Buttz violated his rights to due process and equal protection from March 2, 2006, to December 2006; that defendants Bennett and Mildner subjected him to discrimination and harassment, denied him the right to pursue administrative grievances, and subjected him to actions which endangered him and interfered with his liberty and personal property; and that defendants Terrell, Raney, and Buttz conspired with defendants Bennett and Mildner to violate his right to equal protection.

He also alleges the actions of all defendants subjected him to emotional distress, and that defendants Bennett, Mildner, and Buttz prevented him for using the administrative grievance procedure available to federal prisoners and retaliated against him for pursuing such remedies by acts including verbal abuse, changes in his work and housing assignments, a psychological evaluation, loss of personal property and threats. Finally, he alleges defendants Terrell, Nalley, and Watts failed to properly hire, train, and monitor staff members.

The following facts appear to be uncontested:

From October 12, 2005, through April 27, 2006, plaintiff was assigned to the C-Unit. In April 2006, he was assigned to the A-Unit.

An inmate ordinarily is managed by a unit team consisting

of a unit manager, a case manager, and a counselor.   During plaintiff's assignment to the A-Unit, defendant Mildner was his unit manager, defendant Bennett was his case manager, and, beginning in May 2006, defendant Butz was his counselor.

An inmate's counselor is the primary contact for matters related to the administrative grievance process, including providing forms and addressing requests for informal resolution. If the counselor is not available, an inmate may request assistance from other members of the unit team.   Defendant Bennett sometimes assisted plaintiff when defendant Butz was not available.

Plaintiff frequently requested administrative remedy forms from Bennett and other team members.  However, if a staff member could not immediately provide a form to the plaintiff upon request, plaintiff would allege a denial of the form, even if one were later made available to him.  Because plaintiff filed multiple grievances, staff members were not always able to investigate his requests immediately.

Defendant Bennett frequently discussed with plaintiff his efforts to pursue informal resolution of grievances.  Defendant Bennett makes it a practice to have the inmates in his unit attempt informal resolution of grievances before commencing the formal grievance procedure and to discuss these efforts with

3

them.  However, plaintiff frequently attempted to pursue formal remedies without seeking informal resolution.

Between October 2005 and April 2006, plaintiff often spoke daily with Unit-C team members and requested multiple grievance forms.  He also often requested a form for informal resolution immediately before speaking directly to staff involved in the underlying events.

Bennett sought to assure that inmates in his unit followed procedure in their use of the grievance procedure and interacted appropriately with staff.  At some point, Bennett began to work with plaintiff's counselor to determine whether plaintiff was presenting the grievance forms he requested for processing. Frequently, he learned that plaintiff either had not submitted the requests or had not sought additional forms to complete the grievance procedure.

During his assignment to the A-Unit, plaintiff made frequent requests for grievance forms and submitted multiple requests for informal resolution.  Plaintiff often stood outside the counselor's door or came into his office to request forms or to complain.  His primary complaint was that staff members had acted inappropriately toward him.  He often submitted grievance forms shortly after such an event and without attempting to deal directly with the staff member involved.

4

Because defendant Mildner had worked in the prison's Special Investigative Section, he was aware of plaintiff's allegations of misconduct against multiple staff members. As a result, he personally dealt with plaintiff's requests for forms and responses.

Defendants Bennett and Mildner deny instructing staff to withhold forms from plaintiff. Defendant Bennett worked with plaintiff to assure he presented specific requests in his grievances and that he pursued informal resolution of his complaints. Bennett discussed with plaintiff the appropriate method for presenting a claim and the chain of command for presenting a grievance. Defendant Mildner also worked with plaintiff and advised him to provide a detailed description of his claims in each informal request so his claims could be investigated.

Defendant Bennett routinely advised inmates in the C-Unit to submit a written request to view a Central File so that an appointment time could be set up with the case manager. Bennett does not work in the mailroom and denies he tampered with plaintiff's mail.

Defendant Bennett also denies he changed plaintiff's work assignment in retaliation for plaintiff's frequent use of the grievance procedure.

5

Unit team members make work assignments and consider a prisoner's skills, capabilities, program needs, and idleness. Defendant Bennett was frequently involved in changing job assignments for inmates assigned to the C-Unit. Plaintiff was assigned to a different job for approximately nine days and then was returned to his assignment as job orderly. Bennett believes plaintiff asked to return to his assignment as the unit orderly and that he had not adjusted well to the new assignment.

Defendant Bennett denies he threatened to place anyone in the segregated housing unit or a higher security facility based upon use of the grievance procedure. Bennett does not have the authority to transfer a prisoner to a higher security prison.

Defendant Mildner denies he made a work assignment, requested a physical for a work assignment, or changed a cell assignment in retaliation for plaintiff's use of the grievance procedure.

Defendant Buttz denies he threatened a change in work assignment, interfered with a request for informal resolution, improperly forwarded documents to the Special Investigative Section, improperly changed a work assignment or requested a physical for a job change, improperly referred plaintiff for a psychological evaluation, or interfered with a money order.

Cell changes are made frequently in a unit. Defendant

6

Mildner does not specifically recall plaintiff's cell change and was not aware of any problem between plaintiff and any other inmate in the unit.  The proposed cell change involving plaintiff was not made after safety concerns came to light.

Defendant Buttz routinely referred to the Special Investigative Section complaints containing more serious allegations of staff misconduct.  Buttz denies he diverted any such forms or sent forms to the investigative unit to interfere with plaintiff's use of the grievance procedure.

Defendants Mildner, Buttz, and Terrell deny they sought a mental health evaluation of plaintiff to retaliate for his use of the grievance procedure.  They state the request was based upon plaintiff's behavior, including his inability to communicate with staff, and the disproportionate number of grievances he filed.

Defendants Mildner and Buttz deny they interfered with a money order sent to plaintiff.  Defendant Mildner does not recall this incident but would not ordinarily be involved in processing a money order.  Defendant Buttz recalls that plaintiff received a mailing from a court that included a money order.  Because, pursuant to regulations, prisoners are not allowed to possess money or financial instruments, defendant Buttz forwarded the money order to the institution business

7

office for processing and notified plaintiff of that transfer.

Defendant Mildner denies he conspired with the acting administrative remedy coordinator to arrange the rejection of any grievance filed by the plaintiff.  A number of staff members have substituted for the Executive Assistant in his absence, and defendant Mildner denies that he would be able to identify who would be performing that function at any given time.  Mildner also denies he improperly discussed the grievance filed concerning the rejections of other grievances, and he denies he subjected the plaintiff to harassment or otherwise retaliated against him.  Rather, Mildner states his treatment of the plaintiff was consistent with his practice in dealing with other prisoners in his assignment.

Defendant Terrell had brief contact with the plaintiff during "mainline" when he was in the facility dining area, along with other staff members, to address inmate concerns.  Terrell states that plaintiff had some deficits in communication skills and that plaintiff did not attempt to resolve issues with staff before approaching him.  Terrell referred the issues to appropriate staff for resolution.

Defendants Bennett, Mildner, Terrell, and Buttz deny acting to discriminate or retaliate against plaintiff or to harass him, and they state their actions in addressing him were consistent

with applicable guidelines and law.

The grievance procedure available to federal prisoners is a four-part system which requires a prisoner to first seek the informal resolution of a complaint. If unsuccessful, the prisoner next may present a grievance to the warden of the facility with a copy of the informal resolution attached. The Administrative Remedy Coordinator may waive the informal resolution step in appropriate cases. If the warden's response is not satisfactory, the prisoner may appeal to the Regional Director. The fourth, and final, appellate level is appeal to the Director, National Inmate Appeals, in the Office of the General Counsel located in Washington, D.C. Defendant Watts is the National Inmate Appeals Administrator for the federal Bureau of Prisons (BOP).

Since July 1990, the BOP has maintained SENTRY, a national database regarding administrative grievances filed by federal prisoners. Grievances received at an institution are logged into the database and are assigned a number which is used throughout the grievance procedure. At all stages of the grievance procedure, paper copies of the grievance and response are returned to the prisoner. Records maintained in SENTRY show plaintiff filed a total of 249 administrative remedies during his incarceration and exhausted remedies on 59 issues.

Defendants assert plaintiff did not exhaust remedies regarding claims staff interfered with his access to the grievance process, threatened him with adverse action such as changes in placement or job assignment, or mishandled a money order.

Where a remedy is rejected by an Administrative Remedy Coordinator, the forms are returned to the prisoner for correction and are not retained by prison personnel. The SENTRY system reflects those remedies rejected for failure to use proper procedures.

Where a prisoner is unable to obtain relief from the Unit Team, an Administrative Remedy Coordinator may accept administrative remedy submissions that are not in technical compliance. The coordinator also may waive the informal resolution tier and may accept forms submitted directly to the Warden's office where sensitive issues are presented. Coordinators at the regional and national levels also have discretion to accept such remedies.

Defendant Raney sometimes served as the Executive Assistant/Administrative Remedy Coordinator, and, in the exercise of those duties, had the discretion to reject grievances that did not reflect an effort at informal resolution. The prisoner may pursue an appeal from such a rejection or may resubmit the

10

grievance with corrections.

On August 1, 2006, plaintiff submitted six grievances which were rejected.  He submitted similar grievances on August 21, 2006, which were accepted.

In addition to the grievance procedure, the BOP has a separate administrative tort claim procedure.  Agency records do not reflect that plaintiff submitted such a claim.

## Discussion

Defendants move for the dismissal of this action, or, in the alternative, for summary judgment.

In considering a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts all well-pled factual assertions as true and resolves reasonable inferences in favor of the non-moving party.  However, a complaint must be dismissed where it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. V. Twombly*, ___ U.S. ___, ___ (127 S.Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion...does not need detailed factual allegations, ... a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*, (citations omitted).  The plaintiff's allegations of fact "must be enough to raise a right

11

to relief above the speculative level." *Id*.  Accordingly, a plaintiff must "'nudge...claims across the line from conceivable to plausible'.... The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting *Bell Atlantic Corp.*, 127 S.Ct. at 1974).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The movant has the burden of demonstrating there is an absence of any genuine issue of fact. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  A fact is material if it could affect the disposition of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When that burden is met, the party opposing summary judgment then bears the burden of coming forward with specific facts showing a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).   The

12

nonmoving party may not rest on the allegations contained in the pleadings but must "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir. 1990). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir. 1998).

Plaintiff's response to defendants' motion does not present specific facts or legal argument. Rather, he asks the court to consider his complaint and the supporting affidavits and other filings in this action. Mindful that plaintiff's pro se pleadings are to be liberally construed, the court has examined the entire record and enters the following findings and order.

First, to the extent plaintiff attempts to state a *Bivens* claim against the defendant federal officials in their official capacities, his claim is barred by sovereign immunity. *See Simmat v. United States Bureau of Prison*, 413 F.3d 1225, 1233-34 (10th Cir. 2001). Such a claim, that is, a claim against a federal official in an official capacity, is construed as an action against the United States, and an action for damages against the United States is barred by sovereign immunity except

where that immunity is waived.  *Atkinson v. O'Neil*, 867 F.2d 589, 590 (10th Cir. 1989).  *See also Pleasant v. Lovell*, 876 F.2d 787, 793 (10th Cir. 1989)(*Bivens* action lies only against federal agents sued in their individual capacities).

Next, to the extent plaintiff asserts claims of negligence against the defendants,[2] these claims must be dismissed because plaintiff did not use the sole remedy available, the Federal Tort Claims Act (FTCA), for his claim of injury caused by negligent acts or omissions by federal employees.  *See, e.g., Woodruff v. Covington,* 389 F.3d 1117, 1126 (10th Cir. 2004)(stating an "FTCA action against the United States is the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee acting within the scope of his or her employment" and that the "purpose of this exclusive remedy ... was to give federal employees an absolute immunity from common law tort actions")(internal citations and quotations omitted).

The FTCA, which waives the sovereign immunity of the United States in certain circumstances, *see* 28 U.S.C. § 2674, requires a claimant first to present an administrative claim to the federal agency whose acts are the basis of the claim.  The claim

---

[2] The court accepts defendants' unrefuted assertion that the negligence claims consist of negligence in hiring, training, and supervising employees, loss of a money order, and loss of grievance materials.

must be presented within two years after the claim accrues. *See* 28 U.S.C. §§ 2401(b) and 2675. The exhaustion of the administrative claim is "a jurisdictional limitation, which should be strictly construed." *Franklin v. United States*, 992 F.2d 1492, 1503 (10th Cir. 1993)(citation omitted).

Because plaintiff did not present an administrative tort claim, he has not satisfied the jurisdictional prerequisite of the FTCA, and his claims of negligence must be dismissed.

Plaintiff's remaining claims against the defendants in their individual capacities may proceed only if he has properly exhausted available administrative remedies.

The Prison Litigation Reform Act (PLRA) established an exhaustion requirement for prisoners filing civil actions under federal law. "No action shall be brought with respect to prison conditions under section § 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. §1997e(a). This exhaustion requirement "is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 918-19 (2007). The federal courts, however, must "ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*,

478 F.3d 1223, 1225 (10th Cir. 2007).

The record before the court does not reveal any grievance that was fully exhausted by appeal to the national level. And while plaintiff claims he was repeatedly rebuffed in his efforts to obtain and pursue grievances, he has provided little specific detail. These facts support defendants' argument that plaintiff failed to complete the remedy, and the court notes that the interference itself does not state a claim for relief. *See Walters v. Corrections Corporation of America,* 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004)(unpublished op.)(prisoner's "alleged denial of access to state administrative grievance procedures" would not have "resulted in a violation of his constitutional rights" where prisoner was afforded access to the courts).[3]

Because plaintiff insists that he was unable to pursue grievances due to interference by staff, however, the court, in an abundance of caution, has considered the merits of the grievances to determine whether, if plaintiff somehow was

---

[3]
The court specifically finds plaintiff's bare allegations that defendant Raney summarily rejected several grievances submitted at one time is insufficient to state a claim for relief. It appears plaintiff resubmitted similar grievances, and he offers no evidence to suggest he was unable to pursue the relevant claims due to the alleged rejection.

16

thwarted in diligent, good faith efforts to pursue administrative remedies, his underlying claims would be sufficient to allege a violation of his protected rights.

First, many of the grievances address allegations of verbal abuse by prison authorities.  It is settled that taunts or other verbal abuse, however offensive, do not state a constitutional claim.  *See Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992); *Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir. 1982) (per curiam); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir. 1979)(per curiam).  Therefore, plaintiff cannot prevail on these claims.

Next, to the extent plaintiff asserts a claim of emotional distress arising from the alleged denial of access to remedy forms, his claim fails because he cannot establish any physical injury associated with that denial.

The Prison Litigation Reform Act established that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e)(2007); *see also Searles v. Van Bebber,* 251 F.3d 869, 875-77 (10th Cir. 2001), *cert. denied,* 536 U.S. 904 (2002)(recognizing PLRA imposed limits on recovery for emotional harm).

17

Plaintiff also asserts a claim of retaliation arising from his efforts to pursue administrative remedies.  Prison officials may not retaliate against a prisoner for exercising the right of access to the courts.  *Green v. Johnson,* 977 F.2d 1383, 1389 (10th Cir. 1992); *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990).

However, "an inmate is not inoculated from the normal conditions of confinement ... merely because he has engaged in protected activity."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

A prisoner alleging retaliation "must prove that 'but for' the retaliatory motive, the incidents to which he refers ... would not have taken place ...."  *Smith,* 899 F.2d at 949-50 (10th Cir. 1990)(quoting *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979)).

A prisoner may not rest on conclusory allegations of retaliation and instead must allege specific facts in support of the claim.  *Frazier v. Dubois,* 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  Circumstantial evidence, such as temporal proximity, a sequence of events, or suspicious timing, may be sufficient to support a claim of retaliation.  *See Smith,* 899 F.2d at 949 (prisoner supported retaliation claim with "only means available to him-circumstantial evidence of the suspicious timing of his

18

discipline, coincidental transfers of his witnesses and assis-
tants"). *But see Wright v. McCotter,* No. 98-4095, 1999 WL 76904,
at *1 (10th Cir. Feb. 18, 1999) ("Standing alone, some temporal
proximity between Plaintiff's grievance and lawsuit filings and
the administrative segregation does not constitute sufficient
circumstantial proof of a retaliatory motive to state a claim.").

The court has carefully reviewed the record and finds no
basis to allow the claim of retaliation to proceed.  First,
defendants have provided a detailed explanation for the acts
identified by plaintiff as retaliatory.  Plaintiff's response, as
noted, refers the court to his original complaint and affidavits
but does not make allegations that specifically link these acts
to his own pursuit of legal and administrative remedies.  Some of
the acts are clearly acts taken pursuant to policy, such as
removing the money order from plaintiff's possession or opening
incoming, non-privileged mail, while others, such as the referral
to psychological services, proposing a cell change, and changing
a work assignment, are within the ordinary management decisions
of prison officials.  While plaintiff conceivably might sustain
such a claim on these facts with appropriate factual support, it
is uncontroverted here that the cell change never took place, the
work assignment was changed for approximately nine days and
rescinded after plaintiff failed to adjust, and the psychological

19

referral was pursued in an effort to evaluate plaintiff's abilities and adjustment. Finally, while temporal proximity to an act may lend support to a prisoner's allegation of retaliatory motive, the record here suggests the plaintiff pursued multiple grievances and made frequent requests. No series of events has been shown which lends support to the claim of retaliation.

Finally, plaintiff's bare claims alleging a failure by defendants Watts, Nalley, or Terrell to properly monitor or supervise employees must be dismissed as plaintiff has failed to show the requisite personal participation or acquiescence by any defendant. *See Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992)(*citing Kite v. Kelley,* 546 F.2d 334, 338 (10th Cir. 1976)(in a *Bivens* action, "before a supervisor may be held for acts of an inferior, the superior ... must have participated or acquiesced in the constitutional deprivations")).

### Conclusion

The plaintiff has failed to support his claims with detailed factual allegations and has not responded to the legal arguments presented by defendants. The court finds, after a review of the entire record, that no genuine issue of fact is presented and concludes defendants' motion to dismiss, or, in the alternative, for summary judgment (Doc. 40) should be granted.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion to

dismiss, or, in the alternative, for summary judgment (Doc. 40) is granted.  This matter is dismissed and all relief is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 19th day of March, 2008.

S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge